**2016 BNH 005 Note: This is an unreported opinion. Refer to LBR 1050-1 regarding citation.**

---

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | Bk. No. 14-12447-BAH |
| | Chapter 7 |
| Peter J. Lombard, Jr., | |
|     Debtor | |
| | |
| Robert Browne, | |
|     Plaintiff | |
| | |
| v. | Adv. No. 15-1036-BAH |
| | |
| Peter J. Lombard, Jr., | |
|     Defendant | |

*Marc W. McDonald*
*Ford & McPartlin, P.A.*
*Portsmouth, New Hampshire*
*Attorney for the Plaintiff*

*Brad C. Davis*
*Davis/Hunt Law, PLLC*
*Franklin, New Hampshire*
*Attorney for Defendant*

## MEMORANDUM OPINION

**I. INTRODUCTION**

The Court has before it the complaint of creditor Robert Browne ("Browne") seeking to deny debtor Peter Lombard (the "Debtor") a discharge pursuant to 11 U.S.C. § 727(a)(3), (a)(4)(A), and (a)(5).[1]  The Court held a trial on the complaint on January 21, 2016.  For the

---

[1] All further references to "section," "§," "Code," or "Bankruptcy Code" are references to title 11 of the United States Code, unless otherwise indicated.

reasons set forth below, the Court finds that Browne failed to carry the burden of proof on his claims and that the Debtor will not be denied a discharge.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS[2]

The Debtor formerly operated a number of restaurants, including Café Bella Sera, Inc. and Pete's Tuscan Hibachi Grill, Inc.  The term "operated" is significant because the Debtor inconsistently testified about whether he owned Café Bella Sera or whether it was a subsidiary of another company, Patrilom, LLC, owned by his daughter.  The Debtor's Statement of Financial Affairs ("SOFA"), however, identifies Patrilom as the holding company of both Café Bella Sera and Pete's Tuscan Grill, and this identification is consistent with the Debtor's Schedule B, which does not identify the Debtor as having any ownership interest in either restaurant.  The Debtor testified unequivocally that his daughter owned Patrilom, LLC and that he had no ownership interest in it.

Browne was a friend of the Debtor's father and a frequent customer of Café Bella Sera.  In 2008, Café Bella Sera began to experience financial difficulties, and the Debtor was having trouble getting the new restaurant, Pete's Tuscan Hibachi Grill, up and running.  Over the course of 2008 through November 2011, Browne transferred—either to the Debtor, or to the restaurants the Debtor was operating—over $300,000 (the "Browne Funds" or "Funds").[3]  At the time Browne

---

[2] The following facts are drawn from the trial record.  The Court also takes judicial notice of the docket in the adversary proceeding and main bankruptcy case.
[3] Browne made the transfers either personally or through two of his business entities, JRL Properties, Inc. and Aqua Gulf Transport, Inc.

2

supplied the Funds, no repayment terms were discussed or formalized in writing.   The record is unclear as to whether the Funds were presented to the Debtor individually or in his capacity as an officer of the two restaurant entities, but some of the Browne Funds were turned over to the restaurant entities themselves.   What is clear is that the purpose of the Funds was to keep the restaurants afloat.

Sometime in 2012, Browne determined that he would suffer deleterious tax consequences if the transfers he had been making to the Debtor and the restaurants were treated as "gifts" for tax purposes.   Browne, accordingly, decided to begin demanding that the Debtor repay the transfers.   Again, the record is unclear as to what specific repayment agreement, if any, was made between the Debtor and Browne.   The Debtor's testimony was that when he received the money he considered it a gift, but when Browne began to demand repayment, he made the repayments out of a sense of moral obligation.   In his testimony, the Debtor was clear that he still considered the Browne Funds a gift, despite having repaid some of the money, and despite having scheduled an undisputed claim in the name of Browne and his two business entities on his Schedule F in the aggregate amount of $387,080.

Apparently unable to keep the restaurants afloat and make payments to Browne, the Debtor filed a chapter 7 bankruptcy petition on December 30, 2014.   A few months before filing his petition, the Debtor negotiated a settlement agreement with Café Bella Sera's landlord, pursuant to which the landlord repossessed the real property that Café Bella Sera was leasing and took possession of all of the personal property located there.   That personal property included Café Bella Sera's point of sale computer, which contained data that the Debtor did not have anywhere else.   At trial, the Debtor admitted that he did not have access to that data anymore.

3

Browne did not attend the trial. The only witness called to testify by either side was the Debtor. Aside from the Debtor's testimony, the Court admitted documentary evidence consisting of canceled checks showing disbursements and repayments of the Browne Funds, emails discussing Browne's pre-petition collection attempts, selected portions of the Debtor's Schedules and SOFA, and documents relating to the transactions between Café Bella Sera and its landlord. The Court also admitted Browne's discovery request for the production of documents and the Debtor's responses thereto, comprising most of the discovery done in this case.

### III. DISCUSSION

Browne's complaint spans five counts, requesting denial of the Debtor's discharge under various theories: § 727(a)(3)—failure to keep or preserve records, § 727(a)(5)—unexplained dissipation of assets, and § 727(a)(4)(A)—false oath. The Court evaluates each of these requests while keeping in mind that "[e]xceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's fresh start policy." Razzaboni v. Schifano (In re Schifano), 378 F.3d 60, 67 (1st Cir. 2004) (quoting Palmacci v. Umpierrez (In re Umpierrez), 121 F.3d 781, 786 (1st Cir. 1997).

    A. Failure to Keep Records

Section 727(a)(3) places an affirmative duty on every debtor to "maintain books and records accurately memorializing his business affairs." Harrington v. Simmons (In re Simmons), 810 F.3d 852, 857 (1st Cir. 2016). The Court must deny a debtor's discharge if the debtor

> has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

4

§ 727(a)(3).  This section does not require the party seeking to deny discharge to prove fraudulent intent.  Schifano, 378 F.3d at 70.  The plaintiff must, however, "make a prima facie showing that the debtor has failed to maintain adequate records."  Simmons, 810 F.3d at 857.

Browne argues that the Debtor is unable to produce records showing what he used the Browne Funds for.  Indeed, Browne apparently tailored his discovery efforts and presentation of evidence at trial largely to bolster this argument.  The problem with this approach is that it does not fit neatly within the framework of § 727(a)(3).  The purpose of this section is to ensure that the Debtor provides a "reasonably complete" picture of his financial condition, but a debtor is not expected to keep a precise record of every transaction he makes.  Id.  Conversely, Browne has premised his claim under this section on the Debtor's failure to keep a very specific type of record, rather than trying to demonstrate that the Debtor failed to keep adequate records in general.

Notably, Browne's sole document request in this proceeding did not ask for bank statements or for any of the "vendor receipts" about which the Debtor testified at trial and in his Rule 2004 exam.[4]  The most relevant of these requests was for "[a]ny documents showing how the proceeds of any loan made by Mr. Browne, JRL Properties, Inc. and Aqua Gulf Transport, Inc. were utilized."  Ex. 24, Question 4.[5]  The Debtor freely admitted that he did not keep any such records and explained that he interpreted this question to mean documents showing what the restaurants purchased with the Funds, or how the Funds were used by the restaurants; he did not interpret this question to be a request for bank statements.  And, Browne was aware of the existence of the Café Bella Sera business bank accounts, given the reference to them in the

---

[4] This document request did ask for the Debtor's personal tax returns.  There was no testimony at trial concerning the tax returns, however.  The tax returns were only admitted as exhibits for the limited purpose of showing that the Debtor provided them in response to the document request.  See Ex. 24.

[5] The significance of the wording of this question is not lost on the Court.  Given contradictory evidence about whether the Browne Funds constitute a gift or a loan, the Court is not inclined to interpret this question broadly.

Debtor's SOFA and the fact that some of the payments Browne received were drawn on what appears to be a bank account in the name of Café Bella Sera.  See Ex. 23, Question 11; note 7, infra.

The only affirmative evidence Browne presented of the Debtor's failure to keep and preserve records was his admission that he did not keep records that would show specifically what the Browne Funds were used for.  The Court finds that the Debtor was not required to keep this type of record.  There is no indication from the evidence that such records would have been necessary or helpful in determining the Debtor's general financial condition on the petition date.  See Berger v. Kran (In re Kran), 760 F.3d 206, 210 (2d Cir. 2014) (finding a creditor did not present any evidence of the debtor's failure to keep records and that neither creditor nor trustee were impeded in determining whether debtor had assets for distribution); In Ayers v. Babb (In re Babb), 358 B.R. 343, 355 (Bankr. E.D. Tenn. 2006) (debtor not denied discharge for lack of record-keeping when bank account existed but no records of the account were introduced into evidence).  The Court also finds it persuasive that the chapter 7 trustee, an independent party charged with investigating the Debtor's financial affairs, saw fit to enter a no-asset report in this case, implying that the trustee found the Debtor's records to be adequate, or at least that any deficiencies were not actionable.  See Kran 760 F.3d at 210-11 (finding it relevant that the debtor "provided the bankruptcy court with sufficient documentation to permit the trustee in th[e] case to file a Report of No Distribution").  Accordingly, the Court finds that Browne has failed to meet his burden to demonstrate that the Debtor failed to keep adequate records.

Browne's only remaining argument under this section involves the point of sale computer and the information on it that was lost to the Debtor when Café Bella Sera's landlord took possession of the computer after the rent arrearage settlement.  At trial, the Debtor answered a few

brief questions about the computer. None of this testimony revealed any substantive evidence that would indicate the information on the computer was necessary to determine the Debtor's financial condition or business transactions. The Debtor was asked whether Café Bella Sera used "Quickbooks." Without explanation, the Debtor acknowledged that it did. The Debtor was then asked if he retained the Quickbooks information and the Debtor answered that he was not able to, given the foreclosure process involving the landlord; he and his employees had been locked out of the Café Bella Sera Premises. No other questions were asked that would enable the Court to determine, even at the most general level, what kind of information had existed on the computer and was lost. For example, the Debtor was never asked any foundational questions about what "Quickbooks"[6] was or how Café Bella Sera used it, who entered what information and what period of time that information covered. Given this stark absence of substantive evidence, the Court is unwilling to make an assumption that anything on the computer would have been helpful or essential in determining the financial condition of the Debtor or the substance of his business transactions. Again, on this point, Browne has failed to meet his initial burden of proof that the Debtor failed to preserve records that would help someone determine his financial condition. The Debtor's inability or failure to retrieve or retain a copy of the Quickbooks records from the point of sale computer before or after they were surrendered to or taken by the landlord is therefore inconsequential.

    B.   Failure to Explain Loss of Assets

Next, Browne alleges that the Debtor has failed to adequately explain the loss of the Browne Funds. Section 727(a)(5) provides that the Court shall not grant a debtor a discharge if,

---

[6] The Court assumes that "Quickbooks" was intended to refer to the popular accounting software, but is unwilling to take formal judicial notice of that fact since no explanation whatsoever was provided at trial.

"the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." The party objecting to discharge has the initial burden to show that the debtor has not accounted for past assets. Simmons, 810 F.3d at 860. Intent is not a part of the prima facie case, id, but the "plaintiff must introduce more than merely an allegation that the debtor has failed to explain losses . . . the objector must produce some evidence of the disappearance of substantial assets or of an unusual transaction which disposed of assets." Carlini v. Naugler (In re Naugler), 08-11242-MWV, 2009 WL 1783549 at *2 (Bankr. D.N.H. June 17, 2009) (quoting CIT Grp./Sales Fin., Inc. v. Lord (In re Lord), 244 B.R. 196, 202 (Bankr. D.N.H. 1999). The loss or deficiency must be of "specific identifiable property at a time not too far removed from the bankruptcy." Sonders v. Mezvinsky (In re Mezvinsky), 265 B.R. 681, 689 (E.D. Pa. 2001). Finally, "the temporal depth of the inquiry permissible under §[] . . . 727(a)(5) cannot be set according to a rigid rule; it must be determined only on a case-by-case basis." Koufman v. Sheinwald, 83 F.2d 977, 980 (1st Cir. 1936). If the objecting party carries this initial burden, it then falls upon the debtor to provide an adequate explanation for the loss of assets. Simmons 810 F.3d at 859-60.

The Court finds that Browne has failed to meet his initial burden under § 727(a)(5). Browne disbursed the Funds over a considerable period of time, from 2008 to 2011. The evidence showed that the Debtor received the Funds to support the various restaurants, and according to the Debtor, the Funds were deposited into the business bank accounts and used to pay expenses in the ordinary course.[7] The Debtor testified that the restaurants began to experience serious financial difficulties in 2008, difficulties which caused Browne to disburse the Funds.

---

[7] The Debtor testified that one check from Browne in the approximate amount of $85,000 was endorsed over to the State of Florida for application to an outstanding sales tax obligation.

Browne's problem is that it simply is not surprising that the Debtor and his restaurants no longer possessed the Funds on the petition date; the Court is unwilling to call the absence of the Funds from the Debtor's schedules a "loss" or "deficiency of assets" without more evidence that such a loss occurred. If the Debtor had received the Funds in close proximity to the petition date, especially in a lump sum, the result would likely be different.

The only evidence Browne introduced to demonstrate the loss were copies of the canceled checks showing the Debtor received the Funds, a fact which the Debtor has never disputed. Again, Browne was aware of the existence of the Café Bella Sera business bank accounts but apparently never asked to inspect the account records. Those records could have potentially demonstrated whether a loss occurred; no one has argued that they were either unavailable or that the Debtor was unwilling to produce them. It simply appears that Browne chose not to ask for them. Finally, the Court also finds it persuasive that the chapter 7 trustee took no issue with the alleged loss of the Browne Funds and filed a no-asset report. In sum, Browne has not proven that the Debtor experienced an unexplained loss, and so the Court must decline to deny the Debtor's discharge under § 727(a)(5).

C. False Oath

Section 727(a)(4)(A) provides that a debtor shall not receive a discharge if "the debtor knowingly and fraudulently, in or in connection with the case—made a false oath or account." "The elements that must be proved to avoid discharge under this provision are (1) the debtor knowingly and fraudulently made a false oath, and (2) the false oath related to a material fact in connection to the bankruptcy case." Schifano, 378 F.3d at 68 (citing Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987)). "A debtor's discharge should not be denied under § 727(a)(4)(A) if the false statement or omission is the result of mistake or inadvertence . . . or if the

9

mistake is technical and not real." Mei Yan Zhou v. Wen Jing Huang (In re Wen Jing Huang), 544 B.R. 256, 263 (Bankr. D. Mass 2016) (quoting Gordon v. Mukerjee (In re Mukerjee), 98 B.R. 627, 629 (Bankr. D.N.H.1989)) (internal quotation marks omitted). The burden of proof is on the objecting creditor by a preponderance of the evidence. Harrington v. Donahue (In re Donahue), BAP No. NH 11-026, 2011 WL 6737074 at *11 (B.A.P. 1st Cir. Dec. 20, 2011).

### i. Ownership Interest in Café Bella Sera Not Disclosed on Schedule B

Browne first claims that the Debtor made a false oath when he failed to schedule his ownership interest in Café Bella Sera on his Schedule B. The evidence at trial was insufficient to sustain this claim. The evidence was ambiguous, at best, about whether the Debtor actually owns the shares of Café Bella Sera. The Debtor's testimony conflicted. He stated that he held all the shares of Café Bella Sera, but also stated that that Patrilom, LLC, which he does not own, held the shares. The Court does not find that the Debtor was intentionally obfuscating in his testimony. He simply appeared to be confused about the corporate structure of the restaurant. No documentary evidence was admitted that would clarify this situation, aside from the Debtor's Statement of Financial Affairs, which supports the conclusion that Patrilom was the holding company owner of Café Bella Sera.[8] Based on this ambiguous evidence, the Court cannot conclude that the Debtor's failure to schedule the shares of Café Bella Sera on his Schedule B constitutes a "false" oath. It may very well be that the Debtor's Schedule B correctly reflects his lack of a direct ownership interest in Café Bella Sera.[9]

---

[8] The checks evidencing the payments to Browne do nothing to clarify Café Bella Sera's status. The two checks comprising Exhibit 9 are drawn on an account at Community Bank of Broward and show the payor as "Patrilom LLC dba Pete's Café Bella Sera & Steakhouse." Other checks in Exhibit 10, drawn on perhaps a different account at the same bank during the same approximate period of time, reflect the payor as "Café Bella Sera, Inc."

[9] This would not conflict with the Debtor's inclusion of Café Bella Sera in his answer to Statement of Financial Affairs Question 18; based on the evidence at trial it is clear that the Debtor was the manager of Café Bella Sera, which would require its inclusion in the answer to that question.

### ii. Café Bella Sera's Landlord had a Security Interest

Browne next argues that Café Bella Sera's landlord did not really have a security interest in the personal property that it took possession of from Café Bella Sera, and that the Debtor's statements to the contrary are false oaths.  To demonstrate this claim, Browne points to the lack of a financing statement on file that correctly matches the name of the landlord.[10]  This fact does not tend to disprove the existence of any security interest.[11]  Rather, the weight of the evidence shows that such a security agreement did exist.  See Ex. 14, "Rental Arrearage Settlement Agreement" (referring to a security interest).  Browne has presented no evidence that would cause the Court to discredit the content of Exhibit 14.  Accordingly, the Court finds no false oath here.

### iii. Debtor had "nothing to do" with Patrilom, LLC

Next, Browne impugns the Debtor's statements at a 2004 examination that he had "nothing to do" with Patrilom, LLC.  At trial, the Debtor stated that he had no ownership interest or authority over Patrilom but also acknowledged that he had some ability to sign checks written on Patrilom's bank account.  See Ex. 9 (checks the Debtor identified in testimony as having signed).  The Court also notes that the Debtor identified Patrilom in the answer to SOFA question 18, indicating that he had either an officer, director, or ownership interest in the LLC.[12]  No further contextual evidence was adduced at trial that would help clarify the Debtor's testimony.  The Debtor's potentially conflicting assertions do not appear to be motivated by any fraudulent intent, as he candidly acknowledged having signed the checks in Exhibit 9 and disclosed his connection

---

[10] Exhibit 14, identifies the name of Café Bella Sera's landlord as "Barclay Millennium LLC."  The only financing statement entered into evidence covering property of Café Bella Sera property identifies "650-850 Riverside Drive, LLC" as the secured party.

[11] Perhaps the lack of a financing statement would have rendered the landlord's security interest unperfected as to a third-party lienholder, but it does not tend to disprove the existence of the landlord's security interest in general.

[12] Neither side ever unambiguously claimed that the Debtor had an ownership interest in Patrilom and there is no evidence that would tend to indicate that he did.

with Patrilom in his SOFA—a disclosure made in advance of the Rule 2004 exam. This leaves the Court uncertain as to what the Debtor meant by "nothing to do with Patrilom," when he said it during his Rule 2004 exam. None of the other evidence helped clarify the statement. The Court is certain, however, that because the meaning of the statement is highly ambiguous, there is insufficient evidence to find that the statement was knowingly and fraudulently false.

### iv. The Browne Funds Constituted a "Gift"

The Court cannot find that it was a false statement for the Debtor to claim that the Funds he and the restaurants received were a gift. From the evidence, the Court does find that the Funds were initially provided without any apparent expectation of repayment—an arrangement that could accurately be described as a gift—and that later Browne decided that he would demand their repayment. Whether this somehow transformed the transaction from a gift to a loan is not a determination the Court needs to make. It is fair to say, however, that the legal status of the Browne Funds is uncertain and that for the Debtor to take the position that the Funds were a gift cannot be a knowingly and fraudulently false statement.

### v. Checks to Debtor from Browne were Always Made out to Café Bella Sera

At his deposition, the Debtor claimed that none of the Browne Funds had been given to him individually, but rather that all the checks had been made payable to Café Bella Sera. At trial, the Debtor admitted that he had been mistaken, when confronted with the checks in Exhibits 7 and 8. The Debtor explained that his mistake stemmed from the fact that checks had been received years before—between 2008 and 2011—and that he had not had an opportunity to review them before sitting for the Rule 2004 exam. The Court notes that the Debtor did list the Browne Funds in Schedule F, in the total amount of $387,080, so it does not appear that the Debtor was trying to hide the existence of the fact that he and the restaurants received the Funds. Given all the facts,

12

the Court accepts the Debtor's explanation about his statement at the Rule 2004 examination and finds that the statement was an inadvertent mistake, rather than a knowingly and fraudulently false statement. False statements made inadvertently are not grounds for withholding a discharge under § 727. See Huang, 544 B.R. at 263.

   *vi. Miscellaneous*

Browne's complaint contains other allegations in its paragraphs 42- 44 alleging the existence of various materially false statements for which Browne claimed the Debtor's discharge could be denied pursuant to § 727(a)(4)(A). One of these involved an email that the Debtor had supposedly sent to creditors under a false name. This email was not admitted into evidence at trial, so the Court finds insufficient evidence to satisfy § 727(a) on that claim. To the extent that the Court has not discussed the other allegations made in these paragraphs of the complaint, it finds the statements referred to in them either to be immaterial, even if true, or that no evidence was presented regarding them at trial.

## IV. CONCLUSION

For the reasons set forth above, the Court declines to deny the Debtor a discharge. A separate judgment will enter to that effect. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

  ENTERED at Manchester, New Hampshire.

Date: March 30, 2016       /s/ Bruce A. Harwood
                 Bruce A. Harwood
                 Chief Bankruptcy Judge